### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

In re

**JOHN WAYNE MOCADLO,**                    **Case No. 21-20971 (JJT)**

**Debtor.**                    **Chapter 7**

───────────────────────────────

**WILLIAM K. HARRINGTON,**                    **Adv. Proc. 23-_____ (JJT)**
**United States Trustee for Region 2,**

**Plaintiff,**

**v.**

**JOHN WAYNE MOCADLO,**

**Defendant.**

───────────────────────────────

### COMPLAINT TO DENY DISCHARGE OF DEBTOR JOHN WAYNE MOCADLO
### UNDER 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4) and 727(a)(5)

William K. Harrington, the United States Trustee for Region 2, by and through his

undersigned counsel, for his complaint against **DEBTOR JOHN WAYNE MOCADLO**

hereby alleges as follows:

### Jurisdiction And Venue

1.      This Complaint initiates an adversary proceeding as contemplated by Rule

7001(4) of the Federal Rules of Bankruptcy Procedure ("FRBP"). This controversy is a "core

proceeding" as the term is defined by 28 U.S.C. § 157(b)(1) and (b)(2)(J).

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(J) and 1334 in that it arises under 11 U.S.C. § 101, *et seq.* ("Bankruptcy Code")

and arises in or relates to the bankruptcy case now pending before this Court, styled: In re John

1

<u>Wayne Mocado</u>, Case No. 21-20971 (JJT).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## Parties

4.      The plaintiff William K. Harrington is the duly appointed United States Trustee for Region 2 ("United States Trustee").

5.      The United States Trustee is authorized to commence this adversary proceeding pursuant to 11 U.S.C. § 727(c).

6.      The defendant is John Wayne Mocadlo, the chapter 7 debtor in Case No. 21-20971 (JJT) ("Bankruptcy Case").

## Procedural Background

7.      On October 21, 2021 ("Petition Date"), John Wayne Mocadlo ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. *See* ECF 1[1] attached hereto as Exhibit 1.

8.      Attorney Gary Greene ("Attorney Greene") is counsel to the Debtor. *See* ECF 1.

9.      Bonnie C. Mangan is the chapter 7 trustee of the Debtor's estate ("Trustee Mangan").

10.     The original date to file a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 was January 18, 2022. *See* ECF 5. By order dated January 20, 2022, the United States Trustee obtained an extension of time to March 19, 2022 to file a complaint. *See* ECF 16. By order dated March 10, 2022, the United States Trustee obtained an extension of time to July 18, 2022 to file a complaint. *See* ECF 20. By order dated June 30, 2022, the United States

---

[1] All citations to "ECF __" are citations to documents filed in the Bankruptcy Case.

Trustee obtained an extension of time to October 27, 2022 to file a complaint. *See* ECF 38. By order dated September 22, 2022, the United States Trustee obtained an extension of time to February 14, 2023 to file a complaint. *See* ECF 74. By order dated January 10, 2023, the United States Trustee obtained an extension of time to May 24, 2023 to file a complaint. *See* ECF 133. Accordingly, this Complaint is timely filed.

### Bank Accounts on Schedule A/B and Responses to Certain Questions on SOFA

11.    On the Petition Date, the Debtor filed Schedules A/B through J and a Statement of Financial Affairs ("SOFA"). *See* ECF 1 (Exhibit 1).

12.    On the Petition Date, the Debtor signed a Declaration About an Individual Debtor's Schedules which contained the following oath over his signature: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct" ("Schedules Declaration"). *See* ECF 1 (Exhibit 1) at page 37 of 56.

13.    On the Petition Date, as part of the SOFA, the Debtor signed a declaration under penalty of perjury which contained the following oath over his signature: "I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. § 152, 1341, 1519, 3571" ("SOFA Declaration"). *See* ECF 1 (Exhibit 1) at page 44 of 56.

14.    On Schedule A/B ("Schedule AB") at question 16, the Debtor disclosed that he had no cash as of the Petition Date. *See* ECF 1 (Exhibit 1) at page 11 of 56.

15.    On Schedule AB at question 17, the Debtor disclosed ownership of two checking accounts, one at Wells Fargo with a $1.00 balance and one at KeyBank with a $1.00 balance ("Disclosed Accounts"). *See* ECF 1 (Exhibit 1) at page 12 of 56.

16.    Question 19 on Schedule AB required the Debtor to disclose interests in non-publicly traded stock and interests in incorporated and unincorporated businesses, including an LLC, partnership, and joint venture. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 12 of 56.

17.    Question 10 on the SOFA required the Debtor to disclose any property that was repossessed, foreclosed, garnished, attached, seized or levied within one year of the bankruptcy filing. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 40 of 56.

18.    Question 13 on the SOFA required the Debtor to disclose if he made any gifts of a value of $600.00 or more in the two years before the bankruptcy filing. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 41 of 56.

19.    Question 18 on the SOFA required the Debtor to disclose all transfers and sales of property that took place within two years before the bankruptcy filing, other than transactions in the regular course of business or financial affairs. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 41 of 56.

20.    Question 20 on the SOFA required the Debtor to disclose any financial accounts closed within one year of the bankruptcy filing. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 42 of 56.

21.     Question 27 on the SOFA required the Debtor to disclose ownership of businesses or connections to businesses within the four years prior to the bankruptcy filing. The Debtor's response was "no." *See* ECF 1 (Exhibit 1) at page 42 of 56.

**<u>Testimony at the 341 Meeting</u>**

22.     The Debtor's Section 341(a) meeting of creditors was held on November 17, 2021 ("341 Meeting").

23.     The Debtor appeared at the 341 Meeting conducted by Trustee Mangan, along with Attorney Greene. At the 341 Meeting, Trustee Mangan placed the Debtor under oath and the Debtor gave testimony in response to Trustee Mangan's questions. A copy of the transcript of the 341 Meeting is attached hereto as Exhibit 2.

24.     At the 341 Meeting, the Debtor testified that he remembered signing his bankruptcy paperwork before it was filed with the Court. *See* Exhibit 2 at page 5.

25.     At the 341 Meeting, the Debtor testified that he listed everything he owned in his bankruptcy paperwork and that he answered the questions honestly and accurately. *See* Exhibit 2 at page 5.

26.     At the 341 Meeting, the Debtor testified that he did not need to change or amend any of the information in his bankruptcy paperwork. *See* Exhibit 2 at page 5.

27.     At the 341 Meeting, the Debtor testified that he understood that his bankruptcy paperwork was being filed under penalty of perjury. *See* Exhibit 2 at page 5.

28.     At the 341 Meeting, in response to questions from Trustee Mangan, the Debtor testified that he sold his house in Wallingford, Connecticut ("Wallingford House") in September 2020 ("Wallingford House Transfer"). *See* Exhibit 2 at page 7.

29.     The address of the Wallingford House is 27 Turnberry Road, Wallingford, Connecticut.

30.     At the 341 Meeting, in response to questions from Trustee Mangan, the Debtor testified that Attorney Mike Reiner, an attorney in the same law office as Attorney Greene, handled the closing of the Wallingford House Transfer. *See* Exhibit 2 at pages 8-12.

31.     The Wallingford House Transfer was not disclosed in response to question 18 on the SOFA. *See* ECF 1 (Exhibit 1) at page 41 of 56.

32.     At the 341 Meeting, Trustee Mangan asked the Debtor "[d]o you own a business of any kind?" and the Debtor responded "no." *See* Exhibit 2 at page 16.

33.     At the 341 Meeting, Trustee Mangan asked the Debtor if he owned any business in the four years prior to the bankruptcy filing and the Debtor responded "yes." *See* Exhibit 2 at page 16.

34.     At the 341 Meeting, in response to questions from Trustee Mangan, the Debtor confirmed his ownership of the following companies reported on his 2020 tax return: (a) BW Motors, LLC ("BWM"); (b) Hartford Auto Group, Inc. ("Hartford Auto"); (c) Saybrook Buick GMC, Inc. ("Saybrook Buick"); and (d) Straits Turnpike Automotive, LLC ("Straits Turnpike") (collectively BWM, Hartford Auto, Saybrook Buick, and Straits Turnpike are hereafter referred to as the "Companies"). *See* Exhibit 2 at pages 16-17.

35.     The Companies were not disclosed in response to question 27 on the SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56.

36.     At the 341 Meeting, the Debtor testified that the Companies "were all franchise dealerships" of automobiles. *See* Exhibit 2 at page 17.

6

37.     At the 341 Meeting, Trustee Mangan asked the Debtor, with respect to the Companies, "[a]re these the only business interests that you had in your name as of the petition date or prior to the petition date?" and the Debtor responded "yes, ma'am." *See* Exhibit 2 at pages 16-17.

38.     At the 341 Meeting, Trustee Mangan followed up with the Debtor by asking "[a]ny other business interests as of the petition date?" and the Debtor responded "no, ma'am." *See* Exhibit 2 at pages 18-19.

39.     At the 341 Meeting, Trustee Mangan followed up again with the Debtor by asking "[n]o other partnerships, LLC's, corporations, either you're a stockholder of, nothing like that?" and the Debtor responded "no." *See* Exhibit 2 at page 19.

40.     At the 341 Meeting, Trustee Mangan followed up further with the Debtor about businesses by asking "[h]ow about in the four years before the filing?" and the Debtor responded "Yes. I was a managing partner of Barberino Nissan in Wallingford, Connecticut" until 2017. *See* Exhibit 2 at page 19.

41.     At the 341 Meeting, the Debtor testified in response to questions from counsel for a creditor, Attorney Richard Zeisler ("Attorney Zeisler"). *See* Exhibit 2 at pages 24-31.

42.     At the 341 Meeting, in response to questions by Attorney Zeisler, the Debtor testified that Hartford Auto received $170,000 in "PPP" money during the Covid-19 pandemic and this money was deposited into operating account for Hartford Auto at Nutmeg Federal Credit Union under the control of "Tony Arudia (sic) and Herlof Sorensen." *See* Exhibit 2 at pages 27-28.

43.     Upon information and belief, "Tony Arudia" is Robert Urrutia, who also goes by the name Tony Urrutia ("Mr. Urrutia").

44.     At the 341 Meeting, the Debtor also testified in response to questions from Jennifer Morey, a paralegal in the Office of the United States Trustee ("Ms. Morey"). *See* Exhibit 2 at pages 32-38.

45.     At the 341 Meeting, Ms. Morey questioned the Debtor if he had an ownership interest in Route 9 Automotive, LLC and the Debtor responded "No. Never Been." *See* Exhibit 2 at page 34.

46.     At the 341 Meeting, Ms. Morey questioned the Debtor about a debt on his schedules owed to Rolls Royce Motors Cars and the Debtor testified the debt was for a lease of a Rolls Royce Cullinan that was repossessed in March 2021. *See* Exhibit 2 at page 35.

47.     The repossession of the Rolls Royce Cullinan was not disclosed in response to question 10 on the SOFA. *See* ECF 1 (Exhibit 1) at page 40 of 56.

### Amended Schedule AB and Amended SOFA

48.     On December 9, 2021, the Debtor filed an amended Schedule A/B ("Amended Schedule AB") and an amended Statement of Financial Affairs ("Amended SOFA"). *See* ECF 10 attached as Exhibit 3.

49.     On December 9, 2021, the Debtor signed a Declaration About an Individual Debtor's Schedules in connection with the Amended Schedule AB which contained the following oath over his signature: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct" ("Schedules Declaration"). *See* ECF 10 (Exhibit 3) at page 6 of 14.

50.     On December 9, 2021, as part of the Amended SOFA, the Debtor signed a declaration under penalty of perjury which contained the following oath over his signature: "I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. § 152, 1341, 1519, 3571" ("SOFA Declaration"). *See* ECF 10 (Exhibit 3) at page 14 of 14.

51.     On the Amended Schedule AB, the Debtor did not make any changes to his prior answer to question 16 and again listed no cash. *See* ECF 10 (Exhibit 3) at page 3 of 14; *see* ECF 1 (Exhibit 1) at page 11 of 56.

52.     On the Amended Schedule AB, the Debtor did not make any changes to his prior answer to question 17 and again listed the Disclosed Accounts. *See* ECF 10 (Exhibit 3) at page 3 of 14; *see* ECF 1 (Exhibit 1) at page 12 of 56.

53.     On the Amended Schedule AB, the Debtor amended his prior response to question 19 to add the following two previously undisclosed companies: a 100% interest in Hartford Auto and a 100% interest in Straits Turnpike. *See* ECF 10 (Exhibit 3) at page 3 of 14; *see* ECF 1 (Exhibit 1) at page 12 of 56.

54.     On the Amended SOFA, the Debtor did not make any changes to his prior answers to questions 13 and 20. *See* ECF 10 (Exhibit 3) at pages 10-11 of 14; *see* ECF 1 (Exhibit 1) at pages 11-12 of 56.

9

55.     On the Amended SOFA, the Debtor amended his prior response to question 18 to add a disclosure of the Wallingford Property Transfer to Raymond Bastarache on August 3, 2020 for $900,000.00 via a "Mortgage (deed in lieu)." *See* ECF 10 (Exhibit 3) at page 11 of 14; *see* ECF 1 (Exhibit 1) at page 12 of 56.

56.     On the Amended SOFA, the Debtor amended his prior response to question 27 to add a disclosure of an ownership interest in Hartford Auto and that Hartford Auto existed from April 18, 2016 to December 31, 2020. *See* ECF 10 (Exhibit 3) at page 12 of 14; *see* ECF 1 (Exhibit 1) at page 12 of 56.

57.     On the Amended SOFA, the Debtor amended his prior response to question 27 to add a disclosure of an ownership interest in Straits Turnpike and that Straits Turnpike existed from February 14, 2019 to December 31, 2020. *See* ECF 10 (Exhibit 3) at page 12 of 14; *see* ECF 1 (Exhibit 1) at page 12 of 56.

58.     Despite testifying about owning Saybrook Buick in 2020 at the 341 Meeting, the Debtor failed to include Saybrook Buick in response to question 27 on the Amended SOFA. *See* ECF 10 (Exhibit 3) at page 12 of 14; *see* Exhibit 2 at pages 16-17.

59.     Despite testifying about owning BWM in 2020 at the 341 Meeting, the Debtor failed to include BWM in response to question 27 on the Amended SOFA. *See* ECF 10 (Exhibit 3) at page 12 of 14; *see* Exhibit 2 at pages 16-17.

60.     Despite testifying about the repossession of the Rolls Royce Cullinan at the 341 Meeting, the Debtor did not disclose the repossession of the Rolls Royce Cullinan in response to question 10 on the Amended SOFA. *See* ECF 10 (Exhibit 3) at page 10 of 14; *see* Exhibit 2 at page 35.

## Undisclosed Financial Accounts

61.     On October 27, 2021, the United States Trustee sent a letter to Attorney Greene requesting that the Debtor provide certain documents, including statements for all of the Debtor's financial accounts for the period of January 2020 through October 2021 ("October Letter").

62.     The Debtor produced certain documents to the United States Trustee in response to the October Letter.

63.     On May 5, 2022, the United States Trustee filed a motion for a Rule 2004 examination of the Debtor by agreement ("UST Rule 2004 Motion"). *See* ECF 25.

64.     In connection with the UST Rule 2004 Motion, the United States Trustee issued a subpoena to the Debtor for an examination and production of documents ("UST Rule 2004 Subpoena").

65.     The Debtor produced certain documents in response to the UST Rule 2004 Subpoena.

66.     On November 7, 2022, the United States Trustee filed a motion for a Rule 2004 examination of the Nutmeg Financial Credit Union ("Nutmeg Rule 2004 Motion"), which the Court granted on November 17, 2022. *See* ECF 109 and ECF 119.

67.     In connection with the Nutmeg Rule 2004 Motion, the United States Trustee issued a subpoena to Nutmeg Financial Credit Union ("Nutmeg") for the production of documents ("UST Rule 2004 Subpoena").

68.     Nutmeg produced certain statements and documents in response to the UST Rule 2004 Subpoena.

69.     Based upon statements received by the United States Trustee, the Debtor had open financial accounts in his name at the following institutions as of the Petition Date that were not listed on Schedule AB or Amended Schedule AB: (i) an account at Nutmeg ending in x852 ("Nutmeg Account x852) with a $5.00 balance as of the Petition Date; (ii) an account at Nutmeg ending in x975 with four sub-accounts x0001(Business Share Account), x0002 (Business Checking Account), x0003 (Payroll), and x0009 (Sub Share Account); (iii) an account at Venmo with an address of @John-Mocadlo ending in x6111 ("Venmo Account"); and (iv) an account at Paypal ending in x7802 ("Paypal Account") (collectively, "Undisclosed Financial Accounts").

70.     The statements relating to the Venmo Account and the Paypal Account do not disclose the amount of money in the accounts as of the Petition Date.

71.     As of the Petition Date, the account at Nutmeg ending in x975 had the following balances in the sub-accounts: (i) balance of $25.00 in x0001; (ii) balance of $26,704.09 in x0002; (iii) zero balance in x0003; (iv) zero balance in x0009 (the Sub Share Account x0009 is hereafter referred to as "Nutmeg Sub Account x975-0009"). *See* Exhibit 4 attached hereto.

72.     As of the Petition Date, the account at Nutmeg ending in x975 had the following owners of the sub-accounts: (i) the joint owners of x0001 were the Debtor and Hartford Auto; (ii) the joint owners of x0002 were the Debtor and Hartford Auto; (iii) the joint owners of x0003 were the Debtor and Hartford Auto; and (iv) the joint owners of Nutmeg Sub Account x975-0009 were the Debtor, Daniel Mulryan, and Hartford Auto. *See* Exhibit 4.

73.     As of the Petition Date, the Nutmeg Account x852 was jointly owned by the Debtor and Robert Urrutia. *See* Exhibit 5 attached hereto.

74.     To date, the Debtor has failed to file an amended Schedule A/B that lists the Undisclosed Financial Accounts.

75.     In response to the UST Rule 2004 Subpoena, the Debtor produced statements for an account in his name at KeyBank ending in x5395 ("KeyBank 5395 Account").

76.     The KeyBank 5395 Account was closed in October 2021, just weeks prior to the Petition Date.

77.     The Debtor failed to disclose the KeyBank 5395 Account in response to question 20 on the SOFA or on the Amended SOFA. *See* ECF 1 at page 42 of 56 (Exhibit 1); *see* ECF 10 at page 11 of 14 (Exhibit 3).

78.     In response to the October Letter and the UST Rule 2004 Subpoena, the Debtor produced statements for an account in his name at Wells Fargo ending in x0920 ("WF 0920 Account").

79.     The WF 0920 Account was closed in August 2021, within two months prior to the Petition Date.

80.     The Debtor failed to disclose the WF 0920 Account in response to question 20 on the SOFA or on the Amended SOFA. *See* ECF 1 at page 42 of 56 (Exhibit 1); *see* ECF 10 at page 11 of 14 (Exhibit 3).

81.     At the 341 Meeting, the Debtor failed to reveal the Undisclosed Financial Accounts to Trustee Mangan in response to Trustee Mangan's questions.

82.     At the 341 Meeting, the Debtor failed to reveal the KeyBank 5395 Account to Trustee Mangan in response to Trustee Mangan's questions.

83.     At the 341 Meeting, the Debtor failed to reveal the WF 0920 Account to Trustee Mangan in response to Trustee Mangan's questions.

## Rule 2004 Examination of the Debtor in June 2022

84.     On June 17, 2022, the Debtor testified under oath at a Rule 2004 examination conducted by counsel for the United States Trustee ("June Rule 2004 Exam"). A copy of the transcript of the June Rule 2004 Exam is attached hereto as Exhibit 6.

85.     At the June Rule 2004 Exam, counsel for the United States Trustee questioned the Debtor about the preparation of his bankruptcy documents filed at ECF 1. *See* Exhibit 6 at pages 49-56.

86.     At the June Rule 2004 Exam, the Debtor testified that he signed the Petition, the Schedules Declaration, and the SOFA Declaration filed at ECF 1, he was aware that he signed those documents under penalty of perjury, and he was aware that by signing those documents under penalty of perjury he was affirming the truth and accuracy of the information contained therein. *See* Exhibit 6 at pages 49-54.

87.     At the June Rule 2004 Exam, the Debtor testified that he read his bankruptcy schedules and statement of financial affairs before he signed them. *See* Exhibit 6 at pages 53-54.

88.     At the June Rule 2004 Exam, the Debtor testified that he went over the schedules and statement of financial affairs with Attorney Greene for about an hour before he signed them. *See* Exhibit 6 at pages 54-56.

89.     At the June Rule 2004 Exam, the Debtor testified that he testified truthfully at the 341 Meeting. *See* Exhibit 6 at pages 58-59.

90.    At the June Rule 2004 Exam, the Debtor testified about borrowing $325,000.00 from Raymond Bastarache ("Bastarache") via a promissory note dated February 6, 2020 ("Bastarache Loan") and testified that Bastarache was the party to whom the Wallingford House was transferred via the quitclaim Wallingford House Transfer in 2020. *See* Exhibit 6 at pages 107-117.

91.    At the June Rule 2004 Exam, the Debtor testified that he went to Bastarache for money, rather than a bank, because "[a]ll conventional banking was closed and not taking applications due to COVID." *See* Exhibit 6 at page 115.

92.    At the June Rule 2004 Exam, when asked why he needed $325,000, the Debtor testified that it was for the Wallingford House because "it needed $400,000 worth of work to get up to that par" in the area. *See* Exhibit 6 at pages 108-109.

93.    At the June Rule 2004 Exam, the Debtor testified that he deposited the check of the proceeds from the Bastarache Loan into a new account at KeyBank and that he funded the improvements and repairs to the Wallingford House from that KeyBank account. *See* Exhibit 6 at pages 114-115.

94.    The account at KeyBank into which the proceeds from the Bastarache Loan were deposited was the KeyBank 5395 Account.

95.    At the June Rule 2004 Exam, when asked what work he did to the Wallingford House funded by the Bastarache Loan, the Debtor testified:

> It needed $200,000 worth of site work. It needed about $150,000 worth of bathroom and kitchen renovations. Then it needed about another $100,000 in mill working and floor refinishing. Other

> ancillary stuff, so about another $50,000 of exterior work and about another - - I think the roof was $58,000.

*See* Exhibit 6 at page 110.

96.     At the June Rule 2004 Exam, when asked if he had documentation of the work done on the Wallingford House that was funded by the Bastarache Loan, the Debtor testified "I don't think I have the records anymore." *See* Exhibit 6 at page 110.

97.     At the June Rule 2004 Exam, when asked about his involvement in Route 9 Automotive, LLC, the Debtor testified "I've never been involved in Route 9 Automotive." *See* Exhibit 6 at page 167.

98.     At the June Rule 2004 Exam, after being shown a document from the Massachusetts Secretary of State website listing the Debtor as the manager of Route 9 Automotive, LLC and the person who has authority to file documents with the Massachusetts Secretary of State on behalf of Route 9 Automotive, LLC, the Debtor then admitted his involvement in Route 9 Automotive, LLC saying "we created an entity" for a "Nissan dealership" but "it never owned anything" and the dealership never opened. *See* Exhibit 6 at pages 167-168.

99.     The Debtor failed to disclose Route 9 Automotive, LLC in response to question 27 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56; *see* ECF 10 (Exhibit 3) at pages 12-13 of 14.

100.     At the June Rule 2004 Exam, when asked about Enigma Strategies and Acquisitions, LLC, the Debtor admitted that he was a member of Enigma Strategies and

Acquisitions, LLC and that the company was formed in 2018, and further testified that the company never operated and never had any assets. *See* Exhibit 6 at pages 169-173.

101.    The Debtor failed to disclose Enigma Strategies and Acquisitions, LLC in response to question 27 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56; *see* ECF 10 (Exhibit 3) at pages 12-13 of 14.

102.    At the June Rule 2004 Exam, the Debtor testified that he was sued by American Guardian Warranty Service, Inc. ("American Guardian") in Illinois ("American Guardian Suit") and a judgment entered against him in 2021 for $3.8 million ("American Guardian Judgment"). *See* Exhibit 6 at page 178.

103.    In contrast to his testimony at the June Rule 2004 Exam, the Debtor listed a debt of only $890,508.72 owed to American Guardian on Schedule E/F and listed the debt as "disputed." *See* ECF 1 (Exhibit 1) at page 20 of 56.

104.    The Debtor failed to disclose the American Guardian Suit in response to question 9 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 40 of 56; *see* ECF 10 (Exhibit 3) at pages 9-10 of 14.

105.    At the June Rule 2004 Exam, the Debtor testified about his Amended Schedule AB and admitted that his answer of no cash in response to question 16 was not accurate and that he had "[n]o more than $1,000" in cash at the time of the bankruptcy filing. *See* Exhibit 6 at pages 59-61.

106.    At the June Rule 2004 Exam, when asked if, as of the Petition Date, he had any other bank accounts at financial institutions other than those disclosed on Amended Schedule AB, the Debtor testified "no." *See* Exhibit 6 at pages 61-62.

107.    At the June Rule 2004 Exam, the Debtor testified that the Disclosed Accounts listed on Amended Schedule AB were a Wells Fargo account ending in x7751 and a KeyBank account ending in x8175, and that as of Petition Date, he did not have any other accounts at Wells Fargo or at Key Bank. *See* Exhibit 6 at page 62.

108.    At the June Rule 2004 Exam, the Debtor testified that his KeyBank 5395 Account was closed pre-petition in either August 2021 or September 2021. *See* Exhibit 6 at pages 66-67.

109.    Subsequently at the June Rule 2004 Exam, the Debtor admitted that the Paypal Account existed as of the bankruptcy filing and testified that he did not list it on Schedule AB or Amended Schedule AB because the "balance was always zero" and "money would never sit there. The balance would always stay at zero." *See* Exhibit 6 at pages 63-64.

110.    At the June Rule 2004 Exam, the Debtor admitted that the Paypal Account was shut down post-petition in December 2021 or January 2022. *See* Exhibit 6 at page 65.

111.    Later on in the June Rule 2004 Exam, the Debtor admitted the Venmo Account existed as of the bankruptcy filing and testified that he did not list it on Schedule AB because the "value of it was zero." *See* Exhibit 6 at page 69.

112.    At the June Rule 2004 Exam, the Debtor admitted the Venmo Account was shut down post-petition at the "end of 2021." *See* Exhibit 6 at page 71.

### *Nutmeg Account x852 and Nutmeg Sub Account x975-0009*

113.    At the June Rule 2004 Exam, counsel for the United States Trustee questioned the Debtor about Nutmeg Account x852 and Nutmeg Sub Account x975-0009. *See* Exhibit 6 at pages 73- 86.

114.    At the June Rule 2004 Exam, when asked if he opened Nutmeg Account x852 with Mr. Urrutia in May 2020, the Debtor testified "No. I never would have … I wouldn't have opened it with him." *See* Exhibit 6 at pages 73-75.

115.    Thereafter at the June Rule 2004 Exam, the Debtor was shown the application to open Nutmeg Account x852 dated May 13, 2020 ("Nutmeg x852 Account Application") which reflects a joint account opened in the names of the Debtor and Mr. Urrutia and bears two different signatures under the box titled "Authorization." *See* copy of redacted Nutmeg x852 Account Application attached hereto as Exhibit 7; *see* Exhibit 6 at page 77.

116.    At the June Rule 2004 Exam, when asked if he signed the Nutmeg x852 Account Application, the Debtor testified "[n]o." *See* Exhibit 6 at page 77.

117.    At the June Rule 2004 Exam, when asked about the fact that the Nutmeg x852 Account Application includes his address, his social security number, his driver's license number, his date of birth and other personal information, the Debtor testified Mr. Urrutia had access to "every single intimate detail of everything with my life." *See* Exhibit 6 at pages 76-77; *see* Exhibit 7.

118.    Subsequently in the June Rule 2004 Exam, the Debtor testified that he had nothing to do with the Nutmeg x852 Account Application and reiterated that he did not sign the Nutmeg x852 Account Application. *See* Exhibit 6 at page 78.

119.    At the June Rule 2004 Exam, when asked about the source of the May 13, 2020 opening deposit $118,000.00 for the Nutmeg Account x852, the Debtor testified "I don't know." *See* Exhibit 6 at page 73.

120.     During the June Rule 2004 Exam, when asked about transactions in the Nutmeg Account x852 over the course of the months of May 2020 through March 2021, the Debtor denied knowledge and involvement about any of the transactions, and testified "[w]ow, this incredible to me, no." The Debtor also testified that "[t]his is the first time I've ever known about any of this." *See* Exhibit 6 at pages 80-81.

121.     During the June Rule 2004 Exam, when asked about why his address was not on the statement for February 2021 for the Nutmeg Account x852, the Debtor further testified that "[t]his is the first – ma'am, this is the first time I've ever seeing anything with this account or dollar amount or anything. I'm just – I'm just perplexed at all of this." *See* Exhibit 6 at page 83.

122.     Later on in the June Rule 2004 Exam, when asked again if he knew the source of the May 13, 2020 opening deposit of $118,000.00 for the Nutmeg Account x852, the Debtor testified as follows: "No. I mean, completely honest under oath, I don't know any of this. I've never seen any of this." *See* Exhibit 6 at pages 79-84.

123.     On the same date that the Nutmeg x852 Account Application was signed and the Nutmeg Account x852 was opened, the sum of $352,000.00 was deposited into Nutmeg Sub Account x975-0009.

124.     In the June Rule 2004 Exam, when asked about the deposit of $352,000.00 on May 13, 2020 into Nutmeg Sub Account x975-0009 and if he knew anything about this, the Debtor testified as follows: "No. This is the first time I'm ever even hearing anything about it." *See* Exhibit 6 at page 85.

125.     In the June Rule 2004 Exam, the Debtor was questioned as follows: "Do you know what the source is of the $352,000?" The Debtor testified in response: "No idea." *See*

Exhibit 6 at pages 85-86.

126.    At the June Rule 2004 Exam, the Debtor testified that he was involved in Hartford Auto obtaining a "PPP" loan in 2020 ("Hartford Auto PPP Money"). *See* Exhibit 6 at pages 152-153.

127.    At the June Rule 2004 Exam, the Debtor testified that Hartford Auto PPP Money was initially deposited into the Hartford Auto operating account at Nutmeg. *See* Exhibit 6 at page 153.

128.    At the June Rule 2004 Exam, the Debtor testified that he took the Hartford Auto PPP Money out of the Hartford Auto operating account at Nutmeg and gave it to Attorney Greene or Attorney Reiner's escrow account. *See* Exhibit 6 at pages 153-154.

129.    At the June Rule 2004 Exam, when asked if any of the Hartford Auto PPP Money was put into the Nutmeg Account x852, the Debtor testified "[t]o my knowledge, no." The Debtor further testified about the Nutmeg Account x852 saying, "I did not have anything to do with that. It was my first time ever knowing it existed today." *See* Exhibit 6 at pages 154-155.

**<u>Continued Rule 2004 Examination of Debtor in March 2023</u>**

130.    On March 6, 2023, the Debtor testified under oath at a continued Rule 2004 examination conducted by counsel for the United States Trustee ("March Rule 2004 Exam"). A copy of the transcript of the March Rule 2004 Exam is attached hereto as Exhibit 8.

*Use of Hartford Auto PPP Money and*
*Nutmeg Account x852 and Nutmeg Sub Account x975-0009*

131.    At the March Rule 2004 Exam, counsel for the United States Trustee questioned the Debtor about Nutmeg Account x852 and Nutmeg Sub Account x975-0009. *See* Exhibit 8 at pages 296-327.

132.    At the March Rule 2004 Exam, the Debtor testified that the amount of the Hartford Auto PPP Money was $485,000.00 and that it was deposited into the Hartford Auto operating account at Nutmeg. *See* Exhibit 8 at pages 296-300.

133.    At the March Rule 2004 Exam, the Debtor testified that he took the $485,000.00 in Hartford Auto PPP Money out of the Hartford Auto operating account at Nutmeg and gave it to Attorney Mike Reiner at Greene Law for deposit into the Greene Law firm escrow account. *See* Exhibit 8 at pages 296-300.

134.    At the March Rule 2004 Exam, the Debtor testified that he instructed Attorney Greene to take the $485,0000.00 in Hartford Auto PPP Money out of Attorney Greene firm's escrow account and testified that, in connection with his instruction, Attorney Greene issued check 3761 from the Greene Law PC Clients' Funds account at Liberty Bank dated May 12, 2020 in the sum of $485,000.00 payable to Liberty Bank ("May 12 Liberty $485k Check"). *See* Exhibit 8 at pages 296-300; *see* copy of $485k Check attached hereto as Exhibit 9.

135.    At the March Rule 2004 Exam, the Debtor testified that he deposited the May 12 Liberty $485k Check into an account at Liberty Bank in the name of Hartford Auto. *See* Exhibit 8 at pages 299-300.

136.    On May 13, 2020, Liberty Bank issued a Liberty Bank check 426890 dated May 13, 2020 in the amount of $470,000.00 payable to the Debtor ("$470k Debtor Check"). *See* copy of $470k Debtor Check attached hereto as Exhibit 10.

137.    At the March Rule 2004 Exam, the Debtor testified and admitted that the $470k Debtor Check was funded with the proceeds of the May 12 Liberty $485k Check. *See* Exhibit 8 at pages 303-304.

138.    On May 13, 2020, the Nutmeg Account x852 was opened by the Debtor and Mr. Urrutia through the Nutmeg x852 Account Application with an opening deposit of $118,000.00 funded by the $470k Debtor Check. *See* Exhibits 7, 10 and 11 hereto (Exhibit 11 is Nutmeg Account x852 statement reflecting the opening deposit of $118,000.000 and the deposit receipt for the $470k Debtor Check).

139.    At the March Rule 2004 Exam, the Debtor again testified that he did not sign the Nutmeg x852 Account Application. *See* Exhibit 8 at page 310.

140.    At the March Rule 2004 Exam, the Debtor testified that he does not know Javier Roman whose name appears on the Nutmeg x852 Account Application as the person at Nutmeg who opened the Nutmeg Account x852. *See* Exhibit 8 at page 311-312.

141.    The back side of the $470k Debtor Check reflects the date of May 13, 2020, the Nutmeg routing number of 21197362, and the "USERID: JROMAN." *See* Exhibit 10.

142.    At the March Rule 2004 Exam, when shown deposit receipts from Nutmeg and account statements for Nutmeg Account x852, as well as the $470k Debtor Check, the Debtor admitted that the opening deposit of $118,000.00 into Nutmeg Account x852 on May 13, 2020

was funded from the $470k Debtor Check. *See* Exhibit 8 at pages 312-319; *see* Exhibits 10 and 11.

143.    At the March Rule 2004 Exam, when shown deposit receipts from Nutmeg and account statements for Nutmeg Sub Account x975-0009, as well as the $470k Debtor Check, the Debtor admitted that the deposit of $352,000.00 into Nutmeg Account x975 on May 13, 2020 was funded from the $470k Debtor Check. *See* Exhibit 8 at pages 312-319; *see* Exhibits 10 and 11.

144.    Subsequently at the March Rule 2004 Exam, the Debtor admitted he was there at Nutmeg when the Nutmeg Account x852 was opened and the Nutmeg x852 Account Application was filled out. *See* Exhibit 8 at pages 315-316.

145.    Later on in the March Rule 2004 Exam, the Debtor testified that he was the person who deposited the $470k Debtor Check which funded the $118,000.00 opening deposit into Nutmeg Account x852 and the $352,000.00 deposit into Nutmeg Sub Account x975-0009 on May 13, 2020. *See* Exhibit 8 at page 323.

146.    Despite admitting his involvement in the opening of Nutmeg Account x852 and funding the opening deposit of $118,000.00 from the $470k Debtor Check at the March Rule 2004 Exam, the Debtor denied having knowledge of the Nutmeg Account x852 at the time of the filing of his Bankruptcy Case when asked at the March Rule 2004 Exam "[y]our bankruptcy documents failed to disclose the Nutmeg account ending in 852; why is that ?" and the Debtor responded "I didn't even know it existed" and then testified that he learned of the Nutmeg Account x852 "when I had my deposition in June of last year." *See* Exhibit 8 at pages 315-316.

147.    Subsequently at the March Rule 2004 Exam, the Debtor repeated that he did not know about Nutmeg Account x852 at the time of the filing of his Bankruptcy Case when asked why the account was not listed in his bankruptcy documents and testified that the first time he learned of Nutmeg Account x852 was "[i]n June of last year during my deposition." *See* Exhibit 8 at page 321.

<u>*Use of Bastarache Loan*</u>

148.    At the March Rule 2004 Exam, counsel for the United States Trustee questioned the Debtor about the use of the Bastarache Loan. *See* Exhibit 8 at pages 204- 274.

149.    At the March Rule 2004 Exam, the Debtor testified that he received net proceeds of $290,212.48 ("Bastarche Loan Net Proceeds") from the Bastarache Loan after deductions and payments, including 6 points to Bastarche in the amount of $19,500.00. *See* Exhibit 8 at pages 207-210.

150.    At the March Rule 2004 Exam, when asked what he used the Bastarche Loan Net Proceeds for, the Debtor testified "for finishing home renovations" for the Wallingford House. *See* Exhibit 8 at page 210.

151.    At the March Rule 2004 Exam, when asked if he used the Bastarche Loan Net Proceeds for anything else other than the renovations of the Wallingford House, the Debtor then testified he may have spent some money on his personal expenses as he was unemployed at that time in February 2020. *See* Exhibit 8 at page 210-211.

152.    At the March Rule 2004 Exam, in response to a follow up question about whether he used the Bastarche Loan Net Proceeds for anything else aside from the renovations

of the Wallingford House, the Debtor then testified:

> That was it. The house was in complete disarray. There was no landscaping, and there was still a lot of contractors to pay. So, the kitchen was still going in and it was a big property, so the cash got eaten up really fast. I had a $5,000 a week payroll that I was paying for people working on the house plus fixtures and other tradesmen.

*See* Exhibit 8 at page 212.

153.     At the March Rule 2004 Exam, the Debtor testified that CustomCut Interiors did the renovation of the kitchen at the Wallingford House. *See* Exhibit 8 at page 216.

154.     At the March Rule 2004 Exam, the Debtor testified that LD Trades and Rebco did the renovation of the four bedrooms in the Wallingford House. *See* Exhibit 8 at page 216-217.

155.     At the March Rule 2004 Exam, the Debtor testified that LD Trades did the renovation of the basement at the Wallingford House. *See* Exhibit 8 at page 217.

156.     At the March Rule 2004 Exam, the Debtor testified that LD Trades and Rebco did the painting of the Wallingford House. *See* Exhibit 8 at page 217.

157.     At the March Rule 2004 Exam, the Debtor testified that someone named Reenan did the floors of the Wallingford House. *See* Exhibit 8 at page 217.

158.     At the March Rule 2004 Exam, the Debtor was unable to recall who worked on the roof of the Wallingford House. *See* Exhibit 8 at page 217.

159.     At the March Rule 2004 Exam, the Debtor testified that Cullin Brothers Hardscapes and Birch Mountain Earthworks did the work on the three acres of land of the Wallingford House. *See* Exhibit 8 at page 218.

160.    At the March Rule 2004 Exam, the Debtor testified that he did not have any written contracts with any of the contractors who worked on the Wallingford House, that he did not receive any written documentation of the renovations done by any of the contractors who worked on the Wallingford House, and that he did not receive any written estimates for work to be done by the contractors at the Wallingford House. *See* Exhibit 8 at pages 221-222.

161.    At the March Rule 2004 Exam, the Debtor testified that he had all verbal agreements with the contractors who worked on the Wallingford House. *See* Exhibit 8 at page 221.

162.    At the March Rule 2004 Exam, the Debtor testified that he did not get any receipts in any form for any of the money he paid to the contractors for work done on the Wallingford House. *See* Exhibit 8 at pages 223-224.

163.    At the March Rule 2004 Exam, when asked if he had any emails or texts between him and the contractors who worked on the Wallingford House, the Debtor testified, "No." *See* Exhibit 8 at page 228.

164.    At the March Rule 2004 Exam, the Debtor testified about various letters and documents provided to him and/or Attorney Greene by contractors in response to letters that Attorney Greene sent in October 2022 ("Attorney Greene's Letters") requesting documentation of work done and money paid in connection with the Wallingford House. *See* Exhibit 8 at pages 229-257.

165.    At the March Rule 2004 Exam, the Debtor testified that he paid $55,000.00 to Birch Mountain Earthworks in cash for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages 230-231.

166.    At the March Rule 2004 Exam, the Debtor testified that he paid $5,923.93 to Sampson Electric in cash for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages 233-234.

167.    Subsequently at the March Rule 2004 Exam, the Debtor testified that he paid $30,000.00 in total to Sampson Electric in cash for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages 236-237.

168.    At the March Rule 2004 Exam, the Debtor testified that he paid $10,000.00 to CustomCut Interiors in cash in February 2020 for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages 237-238.

169.    At the March Rule 2004 Exam, the Debtor testified that he paid $25,000.00 to $30,000.00 to Ultimate Landscaping in cash for work done on the Wallingford House in 2020 but does not have any proof of the payment. *See* Exhibit 8 at pages 239-241.

170.    At the March Rule 2004 Exam, the Debtor testified that he paid $35,000.00 to Cullins Hardscapes in cash for work done on the Wallingford House in 2020 but does not have any proof of the payment. *See* Exhibit 8 at pages 241-242.

171.    At the March Rule 2004 Exam, the Debtor testified that he paid at least $100,000.00 to L&D Trades in cash between October 2019 through September 2020 for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages 248-251.

172.    At the March Rule 2004 Exam, the Debtor testified that he paid at least $30,000.00 to Rizzo Construction in cash between January 2020 and May 2020 for work done on the Wallingford House but does not have any proof of the payment. *See* Exhibit 8 at pages

252-253.

173.    At the March Rule 2004 Exam, the Debtor testified that he paid at least

$12,000.00 to Rabco Construction in cash in February 2020 for work done on the Wallingford

House but does not have any proof of the payment. *See* Exhibit 8 at pages 253-254.

174.    According to the letters/documentation provided by contractors in response to

Attorney Greene's Letters, the following amounts were represented as having been paid

subsequent to the Bastarache Loan made on February 6, 2020:

> a.  Sampson Electric $5,923
> b.  Cullins Hardscapes $35,000
> c.  Rabco $20,000
> d.  CustomCut Interiors $10,000
> e.  L&D Trades $75,000
> f.  Birch Mountain Earthworks $0[2]
>
> *Total: $146,000*

 *See* Exhibit 8 at page 256.

175.    At the March Rule 2004 Exam, when asked about the foregoing $146,000 figure

and where the remaining money of the Bastarche Loan Net Proceeds went, the Debtor was

unable to provide specific information as to the use(s) of the money. *See* Exhibit 8 at pages 256-

257.

176.    At the March Rule 2004 Exam, when asked "[w]hat other information,

documentary or oral, would exist to corroborate your story that you paid almost $290,000 or

more in contractor expenses to renovate the property at 27 Turnberry?" the Debtor responded

---

[2]  Correspondence from counsel for Birch Mountain Earthworks to Attorney Greene dated December 8, 2022 states that Birch Mountain Earthworks has no documents of work performed at 27 Turnberry Rd., Wallingford, or amounts billed or amounts paid for the period of February 1, 2020 to August 31, 2020.

"No, I'm just going by what - - well, I mean, I don't have any other information." *See* Exhibit 8 at page 257.

177.    Later on at the March Rule 2004 Exam, the Debtor testified that he searched his email address at johnny.mac@live.com for communications about the work done by contractors at the Wallingford House and stated "there was nothing." *See* Exhibit 8 at page 260.

178.    Also at the March Rule 2004 Exam, the Debtor testified that he searched his cell phone for text messages several months ago about the work done by contractors at the Wallingford House and found "[n]othing." *See* Exhibit 8 at page 261.

179.    At the March Rule 2004 Exam, the Debtor testified he did not have a personal computer in 2020 and that he had been using a computer from his dealership businesses but that was taken from him sometime in 2020. *See* Exhibit 8 at page 262.

180.    Subsequently at the March Rule 2004 Exam, when asked "[d]id you look for documents relating to the services performed by the contractors at 27 Turnberry?" the Debtor responded, "I didn't look because I know there was no documents" and then reiterated, "I did not look because I know there was no documents." *See* Exhibit 8 at pages 261-262.

181.    At the March Rule 2004 Exam, the Debtor testified that he took $10,000.00 in cash from the Bastarche Loan Net Proceeds and deposited $280,212.48 into KeyBank 5395 Account on February 7, 2020, and that he then used the $10,000.00 to pay a contractor(s) but was unable to recall which contractor(s). *See* Exhibit 8 at pages 264-266.

182.    At the March Rule 2004 Exam, the Debtor was questioned about the following withdrawals of cash from the KeyBank 5395 Account:

    a.  March 2, 2020 - $8,800
    b.  March 5, 2020 - $20,000
    c.  March 12, 2020 - $155,000
    d.  March 16, 2020 - $90,000

    *Total: $273,800*

(collectively "March 2020 Cash Withdrawals"). *See* Exhibit 8 at pages 266-268.

183.    Other than testifying at the March Rule 2004 Exam that $55,000 of the $155,000 March 12, 2020 withdrawal from the KeyBank 5395 Account went to Birch Mountain and "big payments" went to Cullins Hardscapes and Ultimate Landscaping, the Debtor was unable to recall any specifics of what cash was paid to what contractor out of the March 2020 Cash Withdrawals but thought $25,000.00 went to "Carl" who was the plumber. *See* Exhibit 8 at pages 266-268.

184.    At the March Rule 2004 Exam, the Debtor testified that some of the $90,000 withdrawal on March 16, 2020 from the KeyBank 5395 Account was paid to Designed By Laura for stone, but he never asked for documents from Designed By Laura. *See* Exhibit 8 at pages 271-272.

185.    At the March Rule 2004 Exam, the Debtor testified that he kept about $15,000.00 out of the $90,000 withdrawal on March 16, 2020 from the KeyBank 5395 Account to pay personal expenses, but could not recall any specific significant expenses. *See* Exhibit 8 at pages 272-274.

**The Debtor's Omissions from his Bankruptcy Documents and his False Testimony**

*a)  Schedule AB and Amended Schedule AB*

186.    The Debtor failed to disclose the cash in his possession as of the Petition Date in response to question 16 on Schedule AB and Amended Schedule AB. *See* ECF 1 (Exhibit 1) at page 11 of 56; ECF 10 (Exhibit 3) at page 2 of 14.

187.    The Debtor failed to disclose the Undisclosed Financial Accounts in response to question 17 on Schedule AB and on Amended Schedule AB. *See* ECF 1 (Exhibit 1) at page 12 of 56; ECF 10 (Exhibit 3) at page 3 of 14.

188.    The Debtor failed to disclose his 100% interest in Hartford Auto in response to question 19 on Schedule AB. *See* ECF 1 (Exhibit 1) at page 12 of 56.

189.    The Debtor failed to disclose his 100% interest in Straits Turnpike in response to question 19 on Schedule AB. *See* ECF 1 (Exhibit 1) at page 12 of 56.

190.    The Debtor failed to disclose his interest in Route 9 Automotive, LLC in response to question 19 on Schedule AB or Schedule AB. *See* ECF 1 (Exhibit 1) at page 12 of 56; ECF 10 (Exhibit 3) at page 3 of 14.

191.    The Debtor failed to disclose his interest in Enigma Strategies and Acquisitions, LLC in response to question 19 on Schedule AB or Schedule AB. *See* ECF 1 (Exhibit 1) at page 12 of 56; ECF 10 (Exhibit 3) at page 3 of 14.

*b)  SOFA and Amended SOFA*

192.    The Debtor failed to disclose the American Guardian Suit in response to question 9 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 40 of 56; *see* ECF 10 (Exhibit 3) at pages 9-10 of 14.

193.    The Debtor failed to disclose the repossession of the Rolls Royce Cullinan in response to question 10 on the SOFA. *See* ECF 1 (Exhibit 1) at page 40 of 56.

194.    The Debtor failed to disclose the Wallingford Property Transfer in response to question 18 on the SOFA. *See* ECF 1 (Exhibit 1) at page 41 of 56.

195.    The Debtor failed to disclose the KeyBank 5395 Account in response to question 20 on the SOFA or on the Amended SOFA. *See* ECF 1 at page 42 of 56 (Exhibit 1); *see* ECF 10 at page 11 of 14 (Exhibit 3).

196.    The Debtor failed to disclose the WF 0920 Account in response to question 20 on the SOFA or on the Amended SOFA. *See* ECF 1 at page 42 of 56 (Exhibit 1); *see* ECF 10 at page 11 of 14 (Exhibit 3).

197.    The Debtor failed to disclose Hartford Auto, Straits Turnpike, BWM, and Saybrook Buick in response to question 27 on the SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56.

198.    The Debtor failed to disclose Saybrook Buick and BWM in response to question 27 on the Amended SOFA. *See* ECF 10 (Exhibit 3) at page 12 of 14.

199.    The Debtor failed to disclose his interest in Route 9 Automotive, LLC in response to question 27 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56; *see* ECF 10 (Exhibit 3) at page 12 of 14.

200.    The Debtor failed to disclose Enigma Strategies and Acquisitions, LLC in response to question 27 on the SOFA or on the Amended SOFA. *See* ECF 1 (Exhibit 1) at page 42 of 56; *see* ECF 10 (Exhibit 3) at pages 12-13 of 14.

*c) 341 Meeting*

201.    At the 341 Meeting, the Debtor testified untruthfully when he testified that he listed everything he owned in his bankruptcy paperwork and that he answered the questions honestly and accurately. *See* Exhibit 2 at page 5.

202.    At the 341 Meeting, the Debtor testified untruthfully when he responded "no" to Trustee Mangan's question "[d]o you own a business of any kind?" *See* Exhibit 2 at page 16.

203.    At the 341 Meeting, the Debtor testified untruthfully by failing to reveal Enigma Strategies and Acquisitions, LLC to Trustee Mangan in response to Trustee Mangan's questions. *See* Exhibit 2.

204.    At the 341 Meeting, the Debtor testified untruthfully by failing to reveal Route 9 Automotive, LLC to Trustee Mangan in response to Trustee Mangan's questions. *See* Exhibit 2.

205.    At the 341 Meeting, the Debtor testified untruthfully when he testified that he never had an ownership interest in Route 9 Automotive, LLC. *See* Exhibit 2 at page 34.

206.    At the 341 Meeting, the Debtor testified untruthfully by failing to reveal the Undisclosed Financial Accounts to Trustee Mangan in response to Trustee Mangan's questions. *See* Exhibit 2.

207.    At the 341 Meeting, the Debtor testified untruthfully by failing to reveal the KeyBank 5395 Account to Trustee Mangan in response to Trustee Mangan's questions. *See* Exhibit 2.

*208.*    At the 341 Meeting, the Debtor testified untruthfully by failing to reveal the WF 0920 Account to Trustee Mangan in response to Trustee Mangan's questions. *See* Exhibit 2.

*d) June 2022 Rule 2004 Exam*

209.    At the June Rule 2004 Exam, the Debtor was not accurate when he testified that his testimony at the 341 Meeting was truthful. *See* Exhibit 6 at pages 58-59.

210.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he testified he did not sign the Nutmeg x852 Account Application. *See* Exhibit 6 at pages 73-75, 77-78.

211.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he testified he was not involved in the opening of the Nutmeg Account x852. *See* Exhibit 6 at pages 73-75, 78-84.

212.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he testified that he did not know about Nutmeg Account x852 until that day. *See* Exhibit 6 at pages 73-75, 79-84.

213.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he testified that he did not know the source of the $118,000.00 opening deposit on May 13, 2020 for the Nutmeg Account x852. *See* Exhibit 6 at pages 73-74, 79-84.

214.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he denied knowing about the deposit of $352,000.00 on May 13, 2020 into Nutmeg Sub Account x975-0009. *See* Exhibit 6 at pages 85-86.

215.    At the June Rule 2004 Exam, the Debtor testified untruthfully when he testified that as of the Petition Date he did not have any other bank accounts at financial institutions other than those disclosed on Amended Schedule AB. See Exhibit 6 at pages 61-62.

*e) March 2023 Rule 2004 Exam*

216.    At the March Rule 2004 Exam, the Debtor testified untruthfully when he testified that he did not know about Nutmeg Account x852 until the June Rule 2004 Exam. *See* Exhibit 8 at pages 315-316, 321.

217.    At the March Rule 2004 Exam, the Debtor testified untruthfully when he testified that he did not sign the Nutmeg x852 Account Application. *See* Exhibit 8 at page 310.

## FIRST CAUSE OF ACTION - 11 U.S.C. § 727(a)(2)

218.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

219.    Based upon information sufficient to form a reasonable belief, the Debtor, with an attempt to hinder, delay or defraud creditors and/or Trustee Mangan and the bankruptcy estate, concealed or permitted to be concealed property of the bankruptcy estate within one year before the date of the filing or after the Petition Date and thus has forfeited his right to obtain a discharge of his debts pursuant to 11 U.S.C. § 727(a)(2).

## SECOND CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

220.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

221.    Based upon information sufficient to form a reasonable belief, by failing to disclose the cash in his possession as of the Petition Date in response to question 16 on Schedule AB and Amended Schedule AB, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

## THIRD CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

222.     Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

223.     Based upon information sufficient to form a reasonable belief, by failing to disclose the Undisclosed Financial Accounts in response to question 17 on Schedule AB and on Amended Schedule AB, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

## FOURTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

224.     Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

225.     Based upon information sufficient to form a reasonable belief, by failing to disclose his 100% interest in Harford Auto in response to question 19 on Schedule AB, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

## FIFTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

226.     Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

227.     Based upon information sufficient to form a reasonable belief, by failing to disclose his 100% interest in Straits Turnpike in response to question 19 on Schedule AB, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or

account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### SIXTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

228.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

229.    Based upon information sufficient to form a reasonable belief, by failing to disclose his interest in Route 9 Automotive, LLC in response to question 19 on Schedule AB and on Amended Schedule AB, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### SEVENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

230.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

231.    Based upon information sufficient to form a reasonable belief, by failing to disclose the American Guardian Suit in response to question 9 on the SOFA or on the Amended SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### EIGHTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

232.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

233.     Based upon information sufficient to form a reasonable belief, by failing to disclose the repossession of the Rolls Royce Cullinan in response to question 10 on the SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### NINTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

234.     Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

235.     Based upon information sufficient to form a reasonable belief, by failing to disclose Wallingford Property Transfer in response to question 18 on the SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

236.     Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

237.     Based upon information sufficient to form a reasonable belief, by failing to disclose the WF 0920 Account and the KeyBank 5395 Account in response to question 20 on the SOFA or on the Amended SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### ELEVENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

238.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

239.    Based upon information sufficient to form a reasonable belief, by failing to disclose Hartford Auto, Straits Turnpike, BWM, and Saybrook Buick in response to question 27 on the SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWELFTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

240.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

241.    Based upon information sufficient to form a reasonable belief, by failing to disclose BWM and Saybrook Buick in response to question 27 on the Amended SOFA, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### THIRTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

242.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

243.    Based upon information sufficient to form a reasonable belief, by failing to disclose Route 9 Automotive, LLC and Enigma Strategies and Acquisitions, LLC in response to question 27 on the SOFA and on the Amended SOFA, the Debtor has knowingly and

fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### FOURTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

244.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

245.    By testifying at the 341 Meeting that he listed everything he owned in his bankruptcy paperwork and that he answered the questions honestly and accurately, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### FIFTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

246.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

247.    By testifying at the 341 Meeting that he never had an ownership interest in Route 9 Automotive, LLC, the Debtor has knowingly and fraudulently, in or in connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### SIXTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

248.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

249.    By testifying "no" at the 341 Meeting in response to Trustee Mangan's question if he owned any business of any kind, the Debtor has knowingly and fraudulently, in or in

41

connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A)

and thus has forfeited his right to obtain a discharge of his debts.

### SEVENTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

250.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

251.    By failing to disclose to Trustee Mangan his interests in Route 9 Automotive,

LLC and Enigma Strategies and Acquisitions, LLC in response to her questions at the 341

Meeting, the Debtor has knowingly and fraudulently, in or in connection with the case made a

false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to

obtain a discharge of his debts.

### EIGHTEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

252.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

253.    By failing to disclose the Undisclosed Financial Accounts to Trustee Mangan at

the 341 Meeting, the Debtor has knowingly and fraudulently, in or in connection with the case

made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his

right to obtain a discharge of his debts.

### NINETEENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

254.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

255.    By failing to disclose the cash he had on hand as of the Petition Date to Trustee

Mangan at the 341 Meeting, the Debtor has knowingly and fraudulently, in or in connection

with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A) and thus has

forfeited his right to obtain a discharge of his debts.

### TWENTIETH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

256.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

257.    By failing to disclose the KeyBank 5395 Account and the WF 0920 Account to

Trustee Mangan at the 341 Meeting, the Debtor has knowingly and fraudulently, in or in

connection with the case made a false oath or account in violation of 11 U.S.C. § 727(a)(4)(A)

and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-FIRST CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

258.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

259.    By testifying at the June Rule 2004 Exam that his testimony at the 341 Meeting

was truthful, the Debtor knowingly and fraudulently, in or in connection with the case made a

false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and

thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-SECOND CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

260.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

261.    By testifying at the June Rule 2004 Exam that he did not sign the Nutmeg x852

Account Application, the Debtor knowingly and fraudulently, in or in connection with the case

made a false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. §

727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-THIRD CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

262.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

263.    By testifying at the June Rule 2004 Exam that he was not involved in the opening of the Nutmeg Account x852, the Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-FOURTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

264.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

265.    By testifying at the June Rule 2004 Exam that he did not know about Nutmeg Account x852 until that day, the Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-FIFTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

266.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

267.    By testifying at the June Rule 2004 Exam that he did not know the source of the $118,000.00 opening deposit for the Nutmeg Account x852, the Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a

discharge of his debts.

### TWENTY-SIXTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

268.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

269.    By testifying at the June Rule 2004 Exam that he did not know the source of the $352,000.00 deposit into the Nutmeg Sub Account x975-0009 on May 13, 2020, the Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account at the June Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-SEVENTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

270.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

271.    By testifying at the March Rule 2004 Exam that he did not know about Nutmeg Account x852 until the June Rule 2004 Exam, the Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account at the March Rule 2004 Exam in violation of 11 U.S.C. § 727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

### TWENTY-EIGHTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(4)(A)

272.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set forth herein.

273.    By testifying at the March Rule 2004 Exam that he did not sign the Nutmeg x852 Account Application, the Debtor knowingly and fraudulently, in or in connection with the case

made a false oath or account at the March Rule 2004 Exam in violation of 11 U.S.C. §

727(a)(4)(A) and thus has forfeited his right to obtain a discharge of his debts.

## TWENTY-NINTH CAUSE OF ACTION - 11 U.S.C. § 727(a)(3)

274.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

275.    Based upon information sufficient to form a reasonable belief, the Debtor has, in

violation of 11 U.S.C. § 727(a)(3), concealed, destroyed, mutilated, falsified or failed to keep or

preserve any recorded information, including books, documents, records and papers, from

which the Debtor's financial condition or business transactions might be ascertained and thus

the Debtor has forfeited his right to obtain a discharge of his debts.

## THIRTIETH CAUSE OF ACTION - 11 U.S.C. § 727(a)(5)

276.    Paragraphs 1 through 217 are hereby repeated and realleged as though fully set

forth herein.

277.    Based upon information sufficient to form a reasonable belief, the Debtor has,

violation of 11 U.S.C. § 727(a)(5), failed to explain satisfactorily, before determination of

denial of discharge, the use and/or dissipation of all of the Bastarche Loan Net Proceeds and

any loss of assets or deficiency of assets to meet the Debtor's liabilities and thus the Debtor has

forfeited his right to obtain a discharge of his debts.

**WHEREFORE**, the United States Trustee respectfully requests:

a.    denial of the Debtor's discharge;

b.    the costs of suit; and

    c.     for such other and further relief as is just and proper.

Dated at New Haven, Connecticut this 19th day of May, 2023.

        WILLIAM K. HARRINGTON
        UNITED STATES TRUSTEE FOR REGION 2

By:    <u>/s/ Holley L. Claiborn</u>
        Holley L. Claiborn
        Trial Attorney
        Office of the United States Trustee
        Giaimo Federal Building, Room 302
        150 Court Street
        New Haven, CT 06510
        Holley.L.Claiborn@usdoj.gov
        (203) 773-2210
        Federal Bar No.: ct17216 (Connecticut)